[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The issue before the Court is whether a decree of dissolution of marriage providing, inter alia, that the Plaintiff husband's pension be divided equally between the parties applies to disability retirement payments to which he is presently entitled as a result of his disability subsequent to the entry of the decree. For the reasons hereinafter set forth, the Court finds that the disability retirement payments which Plaintiff is currently receiving do not constitute a "pension" as that term was used in the parties' agreement and subsequently incorporated in the Court's decree.
The marriage of the parties was dissolved on November 17, 1994. The parties had entered into an agreement which was approved by the Court and incorporated in the Court's decree. Both the agreement as well as the decree provided, inter alia,
that the Plaintiff's federal pension be divided equally through the use of a Qualified Domestic Relations Order. At the time, the pension was not in pay status as the Plaintiff was in his mid-thirties and not yet near retirement age. He was in good health at the time and neither party expected the imminent receipt of retirement benefits.
Subsequent to the entry of the decree, the Plaintiff husband became disabled. Under the terms of his employment, he then became entitled to a disability retirement. So long as he remained disabled, that disability retirement benefit would continue until he attained the age of sixty-two, at which time the payments would be "recomputed using an amount that essentially represents the annuity you would receive if you had continued working until the day before your sixty-second birthday and then retired under FERS nondisability provisions." (Court Ex. 1, Special Notice to FERS Disability Annuitants.) CT Page 10177
In an effort to implement the Court's decree, a Retirement Order, dated September 30, 1996, was prepared and executed by counsel for both parties, as well as the Court, and submitted for approval to the United States Office of Personnel Management ("OPM"). This Retirement Order was rejected by OPM. A second document, entitled Qualified Domestic Order (QDRO), dated March 18, 1997, was prepared and executed by counsel for both parties, as well as the Court, and submitted to OPM for approval. This document was likewise rejected. Finally, a third document, entitled Qualified Domestic Relations Order (QDRO), dated May 9, 1997, was prepared, however counsel for the Plaintiff refused to sign the document. Notwithstanding the missing signature of Plaintiff's counsel, the Court signed the document which was thereafter submitted to and approved by OPM.
The sole difference between the proposed Qualified Domestic Relations Orders of March 18, 1997 and May 9, 1997 is the inclusion of a provision in the latter which, while seemingly harmless on its face, had the effect of subjecting Plaintiff's disability retirement payments to equal division between the parties as a pension would have been treated under the Court's decree.
The Plaintiff contends that neither the agreement of the parties nor the Court's decree was to reach his disability retirement payments; rather, the pension to be divided, pursuant to the Court's decree, was the recomputed amount to which the Plaintiff would be entitled upon attaining age sixty-two, i.e. his normal retirement.[1] The Defendant, on the other hand, quite naturally seeks to keep the current Qualified Domestic Relations Order in effect.
The Court finds that the parties clearly intended to divide between themselves a normal retirement benefit to which the Plaintiff would have been entitled had he not become disabled. Neither of the parties anticipated any imminent retirement payments at the time the decree entered. This is not surprising as the Plaintiff was relatively young (in his mid thirties) and apparently in good health. Indeed, the very pension which the parties clearly intended to divide (i.e. a retirement benefit going into pay status at a normal retirement age) will be available in this case at the time the Plaintiff attains age sixty-two. The Plaintiff does not CT Page 10178 dispute the Defendant's entitlement to a portion of the retirement benefits which will become payable at that time.
Logic and equity likewise dictate that the disability retirement payments are not subject to division as a pension as that term was used in the parties' agreement and the Court's decree. The division of a pension is essentially a distribution of a property right. A disability payment, on the other hand, is a substitute for the income which the recipient would have earned until he or she attained retirement age. Subjecting such payments to division as a "pension" would effectively result in a permanent division of what would otherwise have been Plaintiff's earned income until he attained normal retirement age. Such an interpretation would be catastrophic to the Plaintiff and a windfall to the Defendant.[2]
Finally, the Court notes that federal regulations specifically contemplate the result found by this Court, to wit: the commencement of payments to a former spouse upon a disabled employee's attaining the age of sixty-two. See
5 C.F.R. § 838, Subpart F, Appendix A ¶ 311 attached hereto.*
Accordingly, the Qualified Domestic Relations Order is amended to specifically provide for the Defendant's sharing of only that pension benefit to which the Plaintiff will be entitled when he attains the age of sixty-two years (or such other retirement age as normal retirement benefits may commence). The parties are directed to prepare an amendment to this effect. Further, the Court notes that most of the disability retirement payments are presently being held in escrow pursuant to previous order of the Court. All sums presently held in escrow pursuant to said order are to be released therefrom and paid over to the Plaintiff. Finally, any portion of Plaintiff's disability retirement payments (other than support payments required pursuant to the decree) received by the Defendant prior to the entry of the escrow order noted above are to be remitted to the Plaintiff pursuant to a mutually agreed upon repayment schedule. In the event the parties are unable to agree regarding the methodology for the repayment of any such sums, the Court will schedule a hearing upon request and enter an order regarding such repayment.
Solomon, J. CT Page 10179